Consolidated cases 19-4247 United States of America v. Bogdan Nicolescu and 19-4273 United States of America v. Radu Miclaus. 10 minutes for each defendant, 20 minutes for the plaintiff. Mr. Doughton, you may proceed for the appellants. Thank you very much, your honors. I am David Doughton, counsel for the appellant, Mr. Nicolescu. I would like to reserve three minutes for rebuttal. What I would like to address this morning is the fourth assignment of error, which is whether the district court erred in applying a two-level enhancement for traffic of unauthorized devices, access devices. In this case, the court is aware he was convicted of five aggravated identity thefts. He was appropriately consecutively sentenced on those. The issue is, under note two of 2B1.6, does note two apply? Note two, as the court's aware, is to prevent double counting. And we have to look to the convictions of the aggravated identity theft or if it applies to other cases for which he was convicted on the same indictment or at the same sentencing. And it seems clear in looking at the plain meaning of committee note two that it's not limited just to the aggravated identity theft. If the first line in the guideline is, if a sentence in the guideline is imposed in conjunction with. It's not limited if Congress wanted to. Congress could have limited it specifically to aggravated identity theft. They indicate if it's in conjunction to. It also indicates, the note indicates that if the other offenses apply to the transfer or possession or use of the means of conviction, that it doesn't apply then. They're precluded from applying the application. The district court in this case found that it applied because of trafficking. The traffic of the cards. And in fact, trafficking inherently is the transfer which seemed to preclude it. Um, also in the committee note, it indicates that the second sentence in the committee, excuse me, in the committee note indicates that a sentence under this guideline accounts for this fact, this factor being that if the other, if the other sentences were for convictions of the transfer possession or use of means of identification, which clearly was the case in this instance. But, but counsel, isn't it true? I mean, I understand that application note two, we're trying to stop double counting, but why is it double counting? If you can be convicted just upon the simple transfer, but trafficking requires transfer plus something else, right? So trafficking is transfer plus exchange, plus marketing, plus something else. So why is it double counting? If the trafficking offense incorporates greater conduct or necessarily includes more conduct than just mere transfer. Um, I like to address it in a couple of ways. One is the fact that it's vague and we're having this discussion of what it means. And frankly, this is a matter which the rule of lenity should apply, because again, had Congress wanted to, uh, limit it to just the aggravated theft or limited to just specific cases, they could have done it. But the rule of lenity applied to the uh, yes, I believe it would. I mean, cause in this case, I mean, I mean, I don't think that that changes the plain meaning of the statute. Lenity can't kick in unless we have ambiguity. So if you're saying it's plain, then you can't get lenity. Well, I understand your point. Yeah. And, but I, but I don't think it changes the ability of, of where there's, where there's, uh, it seems clear on, you know, there's wiggle room, if you will. And I guess it's one of his wiggle room. It should be interpreted in favor of the defendant. And I don't think that's contrary to the Supreme Court's decision. Uh, but also your honor, we have a situation where, you know, the predicate offense is obviously the aggravated identity theft. In this case, the defendants, um, the purposes of the cards were obviously to finance the operation. It's so that you can't, it's like you couldn't have continued without having, uh, engaged in using the unauthorized X, um, access devices. That's what the purpose of the conspiracy was. The fact that they used, uh, in, uh, somebody else's identity for this purpose is what is the double counting, or it would just be paid for it because you'd have to have consecutive sentencing for that. If you allow the courts to apply this wherever it's not on all fours, because I would agree that trafficking, um, does encompass may encompass something more than just mere transfer, um, that could apply to any underlying offense that would allow, uh, the sentencing court to find another element required other than just mere transfer. And that's why I think it's so important that when you look at the wording and it says in conjunction with the sentence, it, it, what its meaning is, I believe the true meaning is the fact that if you have a, uh, identity theft operation, rarely is it just identity theft because people don't steal other people's credit cards or identity unless they intend to use it to profit later. Um, if it were interpreted as the court indicated, I, I could imagine in almost any case, the prosecutor or the judge could come up with an element or aspect of the underlying offense, which would distinguish it from mere transfer. And so that, and that's the case in this case, you know, that you, you get the consecutive sentencing. And that's why I think it's important that the relevant conduct information, because relevant conduct is not limited, you know, simply, uh, to, uh, what happened, you know, in relation to transfer relevant, what relevant conduct is anything that was needed to further the conspiracy or further the acts, which the people are doing. And thank you for your time. Thank you. Okay. May it please the court, Catherine Schusse from the federal public defender's office on behalf of Radu Miklos. If I may, I'd like to reserve two minutes for rebuttal. With the limited time I have today, I'd like to focus on one of the guideline enhancement errors, which is, um, being a person in the business of receiving and selling stolen property. Um, just before I get to that argument, though, I think it's really important to be clear about what the guideline range was used by the district court. Um, as I detailed in my reply brief, the government is incorrect on the total offense level that was used by the court. Um, at record ID 3273, the total offense level was a 43, not a 45. It was capped at a 38. The government has already conceded a four level enhancement error under 2B1.119, which means this court only needs to find one other two level enhancement error to remand for uh, in the enhancement for being a person in the business of receiving and selling stolen property to Mr. Miklos for two independent reasons. First, there is no evidence Mr. Miklos sold stolen credit cards. Second, even if Mr. Miklos could be liable, um, for his co-conspirators actions, the Bayrob group was not acting as offense. This is- So let me ask you about the first statement you made. Um, I thought that Agent McFarlane talked about 10,000 cards, uh, that he thought had not been harvested directly by your clients, um, but instead that they purchased them from somewhere else. So you said there's no evidence of that, but what about Agent McFarlane's testimony? There's no evidence about Mr. Miklos selling stolen credit cards. The only that receiving was met here either, but even if receiving is met, there also must need to be selling because the, the enhancement requires both. I'm sorry. I misunderstood what you said. Yeah. Okay. No, that's okay. No, I'm glad. So I want to be clear. There's no evidence that Mr. Miklos sold the stolen credit cards. Um, and the enhancement applies only if Mr. Miklos himself, and not just his co-conspirators received and sold the stolen credit cards. This is consistent with the plain language of the guidelines and the weight of the case law. Under 1B1.3, a defendant may be subject to a guideline enhancement based on his own conduct and unless otherwise specified the acts he aided and abetted and those that were jointly undertaken in criminal activity. But by 2B1.1B4's reliance on the defendant's specific conduct, this enhancement falls into the otherwise specified exception. The Fourth Circuit in the Moore case that I cite, applied this limitation to another enhancement for the abusive position of trust, but for the same reason, because it was an enhancement that was focused on the defendant's conduct. And it said, because of the plain language of the enhancement focusing on the defendant's conduct, it fell into this otherwise specified limitation. It compares an obstruction enhancement, which includes a note in the commentary, which expands the liability to the defendant's conduct and anything he aided and abetted, but there's no such commentary in 2B1.1. The plain language of 2B1.1B4 requires the offense to receive, or I'm sorry, the offense to involve receiving stolen property and the defendant to be the person in the business of receiving and selling stolen property. If the Sentencing Commission intended this to apply broadly to jointly undertaken criminal activity, it would have just said the offense involved receiving and selling stolen property. By the Sentencing Commission adding the words, the defendant, it must have meant something. Application Note 5 is consistent with this understanding, right? It includes a non-exhaustive list of factors that the court must use to determine whether the defendant was the person in the business of receiving and selling property. Those factors focus on the defendant's conduct. So they include- You didn't make, or I don't know if you were trial counsel, but these arguments weren't made in the district court, right? So for your client, we're on plain error here? That is correct, Your Honor, and I was not counsel below, but yes, we are on plain error. Yeah, so we don't have case law directly saying that your client couldn't be liable here, right? You're relying on out-of-circuit case law for that proposition? Right, there's nothing in circuit. I'm sorry, say that. So then can the error be plain? Even if we thought it were error, could it be plain? Yes, because I think that if there is an error, and I will say, I'm sorry, I think there's two responses to that question. First, yes, I think it can be plain error. It is consistent, this reading is consistent with other opinions from this circuit, right? So the government cites the Kohler case, which applied it because it was Mr. Kohler, there was evidence that he both received and sold stolen property. So I think while maybe this argument wasn't directly made, it is consistent, that is how this court has sort of understood it, is that there needs to be some connection to the defendant in making this. The other thing is that it is plain error, not only because it's just inconsistent with the plain language of the guidelines, while there's no case directly on point, the guidelines are the guidelines, and they are clear here. So I hope that answers, okay. So by referring specifically to the... Can I ask you a question? So are you saying that if I run a fencing business, and I'm the person at the top, and I have three people who work the counter, and they're the ones that actually exchange the money, I cannot get the enhancement because I didn't personally sell the stolen goods? Right, I think there is. So there are other enhancements that may apply, but this one specifically would not. To you, it may apply to the others that are involved in the receiving and the selling, but this being a specific enhancement for the person who is responsible for... Again, it's not just that the offense involved and everybody involved in this... So why is it that I'm not a person? In my hypothetical where I run the operation, but I actually don't get my hands dirty, why am I not a person in the business of receiving and selling stolen property? I mean, I'm a person and that's my business, isn't it? But you're not the defendant who is the person who is in the business of receiving and selling. Well, I'm a defendant. I'm being charged with a crime. Right, and I just think we need to compare it to the other guideline enhancements that include a broader liability for everybody involved in that conspiracy. The Sentencing Commission was very aware that this 1B1.3 limitation on the jointly undertaken criminal activity, and they chose to include specific language narrowing it to the defendant and not to the offense. So under the plain language, the Sentencing Commission knows how that works and they chose to include that specific language. If they wanted to make sure they didn't include abroad, they would have just included the offense involved and then it covers everybody in the conspiracy. Counsel, do we have to accept that argument to agree with your client? No, Your Honor. Let me make this more clear. Do we have to accept your answer to Judge Nalbandian's hypothetical to rule in favor of your client? No, Your Honor, for a couple of reasons, and I think I lay out in the brief, hopefully clearly, there are three avenues of success for Mr. Miklos on this particular enhancement issue. There is, it applies, the guideline applies, I see I'm out of time. May I just finish my thought? Please. So there's the argument that it applies only to Mr. Miklos if it's his actions and not the Koch conspirators. But if the court doesn't agree with that analysis, the Bayrob group must be acting as offense. And that's consistent with all of the courts who have, and even this court, that it only involves those that are acting as offense. They're selling, receiving and selling stolen property that they themselves did not steal. And then the third is Mr. Miklos himself, that the conspiracy to create the fraud or the fraud with the stealing of the credit cards and the computer fraud was not involved or did not involve the selling of stolen credit cards, right? So the evidence is Nikolescu set up an account on AlphaBay. He gave Valentin Danat one person access to that AlphaBay account. Valentin Danat testified that he took over administering selling credit cards on that. No other of the other five Koch conspirators that testified even knew anything about selling of credit cards. All they knew was that there was a list of credit cards that were stolen. They would use those credit cards to facilitate the fraud. The indictment is very lengthy. It not once mentions the conspiracy to sell credit cards. This was a separate and apart from the fraud that Mr. Miklos was convicted of. Thank you. Good morning, Your Honors. May I please report? As a preliminary matter, Your Honors, the government agrees that the enhancement for sophisticated means under 2B1.1B10 ultimately did not apply at sentencing. The parties originally had agreed that it did apply, but ultimately agreed that it didn't at the sentencing hearing, which did result in an adjusted offense level of 43 rather than 45 for a difference of five levels rather than seven when that reduction for the total offense level was reduced to 38 to encompass the statutory maximum for several offenses. The government does not believe that makes a difference in this case because with the exception of the enhancement for being convicted of a crime under Section 1030 for computer fraud, the government believes that all the enhancements were properly applied in this. I'm sorry. I just want to make clear. So there's five levels to play with. Is that right? Correct, Your Honor. Yes. Can I ask you a question about because it didn't come up in the argument before, but with regard to amount of loss, if, as you know, that credit card note, the $500 per is at issue in front of other panels, if that note gets struck down, do we have to remand on the amount of loss? No, Your Honor, because the primary loss was based on an assessment of the records that were taken from the Bayrob Command and Control Center, which supported a loss of 3.5 to, I believe it was $4.5 million. And that was cross-referenced with the IC3 victim reports that also corroborated that loss amount. And there was an agent who also testified at trial that put the loss at about $4 million. So that's completely separate from the credit cards. And that loss amount from the eBay fraud scheme was the primary basis. The credit card was secondary and completely unnecessary for this court to affirm the loss finding. Okay. And I'll address the issue about the enhancement for trafficking access devices in conjunction with the mandatory sentence for aggravated identity theft under 2B1.6. The two-level the aggravated identity theft sentence centered on the use of five victims' means of identification, which did not account for the vast bulk of harm, certainly not trafficking. There was no double counting in applying this Chapter 2 adjustment. Now, it is undisputed that Application Note 2 of 2B1.6 instructs that if this sentence is imposed for aggravated identity theft under that guideline, that you should not apply the Chapter 2 adjustment for a specific characteristic for the transfer, possession, or use of a means of identification, essentially mirroring the 1028a language. But it's that next sentence in that Application Note that's key, and that's what the appellants are ignoring in this case. Because it says that a sentence under this guideline accounts for this factor, which is the transfer, possession, or use for the underlying offense. So there it's saying that the Commission is presuming that the aggravated identity theft sentence accounts for those factors, but that is not the case here. And the goal of this Application Note is to avoid double counting, but we don't have that here. And that is because 2B1.6a for the aggravated identity theft only captured the use conduct for which the defendants were charged and convicted. As McLeod argues with respect to his aggravated identity theft. Does that mean that the cases from the other circuits that talk about trafficking being transferred are not applicable because of the specific conduct? Or would we still have to Well, I would say that they're not applicable because of how narrow this indictment was that it only charged the use of five means of identification. For instance, the Giannone case that McLeod cites on page five of his reply brief is arguably the closest case. There was a chapter two adjustment for wire fraud in conjunction with an aggravated identity theft sentence. However, it's important to look at the indictment in that case, and it showed that the defendant was charged with much broader conduct for knowingly transferring, possessing, and using a means of identification, which is in the District of South Carolina, case number 3.06CR01011. We don't have that here. We have five charged uses of means of identification when there are thousands more, and certainly there was not trafficking as to those five victims. So, unlike the Giannone case, the aggravated identity theft sentence here could not have possibly considered the additional trafficking conduct which was only accounted for in the first instance under 2B1.1B11B, which involved entirely different victims and different conduct. In this context, unlike the Giannone case, the same aspect of the appellant's underlying offense conduct was not factored in at all under 2B1.6. Instead, it is chapter two that fully accounts for and punishes that distinct additional trafficking conduct, which was far  So, if that's true, what would we look at? The indictment and what else? The sentencing or the PSR? Where's the divide? Why is it made clear that there's this dividing line between the five victims and then the other, the trafficking victims that would lead to the enhancement? You look at the indictment, the evidence as to those five victims, and then the trafficking as to that there was trafficking that occurred. I believe the case agent testified as sentencing that he thought there were probably about 1,500 to 2,000 credit cards that were trafficked in this case on the dark web. For that reason, Your Honor, the government believes that the enhancement was properly applied in this case because the trafficking vastly exceeded the five charge uses of means of identification. With respect to the enhancement for being in the business of receiving and selling stolen property, the court properly applied that enhancement because the appellants both received and were in the business of selling the stolen property. There are out-of-circuit decisions that have held that the enhancement applies to someone who fences property that someone else has stolen, but none of them have addressed the unique situation here. I think it's important to keep in mind how the thefts of these credit cards occurred. One method was this eBay fraud scheme. The defendants in this case certainly were involved with that scheme, but there were many others that were involved as well, and they were not shown that they were responsible for it. There were at least two layers removing them from some of these thefts. I guess my view, and I'd like you to address the argument about the individual defendant that it has to be the individual who sells them to be subject to the enhancement. But my understanding is that they bought credit card numbers or they were obtaining credit card numbers to use them themselves to buy web hosting services or whatever it was, which would not make them a fence. It would just be a thief or somebody who buys stolen property and just uses it for stealing credit card numbers and then selling them, I think. Is there any evidence that they were obtaining the credit card numbers without stealing them and then sold them, which I think would be a classic fence? Whether they were obtaining them without stealing them? Obtaining credit card numbers that they did not steal themselves and then sold them. I don't know that it was broken down to that level. I know the agent said with respect to some, it was unclear what the source was, where they got these cards, but they were definitely buying them originally and eventually moved to this scheme where they were getting the credit cards through a virus. So your argument depends on us agreeing that somebody who is a thief and sells the stolen property can also be a fence or can also be subject to this enhancement? It depends on accepting the view that the enhancement can apply to a defendant who receives stolen property from a thief who's part of the same criminal organization. And I think there's two cases that support that. And it also goes to this aiding and abetting, being able to apply it in the aiding and abetting context. The appellant cite a couple of cases, the Borders case from the Eighth Circuit, it's a 2016 case where the court upheld the enhancement where the defendant gave his co-conspirator Borders a shopping list of trucks that he cut up the unusable parts and sell them. And the court found that it applied in that context, but it also applied to defendant Borders in aiding and abetting theory because he was scouting and stealing some of these trucks that were on this wish list that his co-conspirator Johns had given him. And he was present with John's employee who was selling or stealing these trucks. And I'd say that, you know, the facts there are certainly less compelling in that there's at least two layers that were, that removed the defendants from the thefts in this case, because it was other people like Catalin Dima, Valentin and Tibiru Dene and Marius Mate who were posting these fake eBay auctions and then sending second chance emails where they would be the ones who implemented the virus. They uploaded it into a link or a picture that the victims would click on. And then at that point, the virus was installed and the virus had the ability to determine whether it was going to steal the identity. It would then, if it decided that it was going to, then it would post a page that would ask, for instance, the eBay user to verify their identity. And one of those was to provide the credit card. So if I have a multi-layer organization that steals property and then sells it, as long as it's multi-layer, that that enhancement would apply? That it's not the care, it's not the character of how the property is obtained, but it's just that whether there's an organization or not? If there's evidence that the defendant himself did not commit the thefts. And I think that's what you have here because Nikolascu may have been the person behind the virus, but it is the virus that is implemented by another person that is actually committing the thefts in this case. None of the cases that have been cited have really addressed this unique situation where the thefts are being committed by sophisticated malware. But I would say that also the Saunders case supports the enhancement on an 80-year betting theory where the 11th circuit applied it to a thief's wife who had submitted fraudulent registration documents for 20 cars that her husband stole over a 10-year period and conveyed title and accompanied her husband to deliver the stolen vehicles to buyers and the court found that it applied in that situation. Certainly, the 11th circuit tried to distinguish that in a case where a defendant initiates the thefts and pays others for that. But this is a situation that was driven by the eBay fraud. That's where the money is coming from. They glean three and a half to four million dollars from that scheme. That's the bulk of it and the thefts of the credit cards are really secondary. The defendants who are uploading this virus are getting paid on the back end. Valentin Dima testified that he got 60 to 67 percent of the proceeds from these sales when it was coming back from Romania at page ID 5174. The defendants at eBay fraud scheme definitely was their primary business but the credit cards was definitely also part of their business. The agent testified that they had sold 1,500 to 2,000 cards from what he could tell from their records. That's certainly not inconsequential. It does apply in the aiding and abetting context as demonstrated by the Borders and Saunders case that the appellants themselves cite. The attempt to distance themselves from these transactions is unavailing because both appellants were involved at either the front end or the back end of these transactions. Nicolescu gave Valentin access to the dark web store that was being used and provided the bitcoin wallets that were being used for these transactions. It was Miklaus who was into cash and he certainly received these credit cards. He knew exactly what was going on. His name is all over the spreadsheet where he was checking the validity of these credit cards which was at exhibit 1204 that the government admitted. He also was receiving the spreadsheet from Nicolescu at least three times in 2013 and there was at least another instance in 2014. But there are instance after instance on this spreadsheet where you can see his nickname Minolta in the notes column. Next to the column there's a column that says good and there would be a number zero that would indicate if it was good and if the card was not good it was they would denote that by the number one or the word mort which was the Romanian word for dead. So he certainly was involved in this operation by aiding it by checking the validity of these cards before they were sold in this case. Unless this court has further questions. I guess I still don't understand like why I mean they're still not a fence are they? Like what I would think of is normally when I think of a fence I'm just like the middleman. I just I buy I'm in the business of buying stolen goods and then I turn around and sell them. I'm not stealing this stuff myself. I mean maybe that's too simplistic a view of the world but isn't that what a fence does? And that's really not what these guys are doing. It's a very sophisticated operation but at the end of the day they're just stealing stuff and selling stuff that they've stolen right? They're stealing things that that their co-conspirators have stolen. I would say that there's two layers removing them from the situation. It's not a situation where they have directly said steal you know this type of credit card. But that's I mean isn't that an odd view of conspiracy? I mean we tag defendants with conspiracy all the time. We say you're responsible for what this person does and that person does and the you know probable foreseeable consequences of the conspiracy and all that. But then we turn around and say oh but for purposes of this thing we're going to divide you guys up and the stealing operation is different than the selling operation so we can apply this enhancement. Doesn't that seem odd? I don't think it's odd in this case based on the unique facts in this case your honor because the primary purpose in this case was to defraud these ebay customers. The stealing of the credit cards was really secondary and it was the the virus was so sophisticated that there were a number of factors that would met were met then it would then provide these fake cards to try to sell or fake web pages that would try to solicit the user's credit card information. So it was not Nicolescu or Miklos who were directly stealing this information and I would say that all the cases that have been cited here none of them have addressed this situation. They've left open the question of who the operate the operative actor is with the sophisticated virus that is initiating thefts that are deployed by someone else and I think that's what's key is that somebody else was deploying this virus that ultimately was responsible for stealing the credit cards in this case and that's why they were in receipt of within the definition of the guideline and that is why the guideline was correctly applied in this case. Unless this court has further questions the government would respectfully request that this court affirm the defendant's convictions and sentencing. Thank you your honor. Thank you. Yes your honor in relation to the application a2 if I understand the government's argument correctly if they're able to indict and hone the indictment to leave out the part that might incur the uh the application of note two uh then it wouldn't apply. What what I really have a problem with the government seemed argued in her brief and argues here that because the harm of the unindicted frauds isn't covered that therefore you can apply uh or you you don't have to apply the preclusion of application note two. This would seem to me to allow for instance if there were uh three aggravated uh thefts they chose to indict on two and not indict on one that would permit them to apply or to apply the two-level enhancement to the related offenses uh where had they indicted for all three they wouldn't apply uh and I don't think that that's what the guideline requires. But what if they indicted two in your example and then the other one they indicted for trafficking or something else and proved it all and but they said they're separate the vic we've identified two victims here and one over here so that we can apply the enhancement because we can break it out that way. I mean what what is wrong with that theory? Well I guess the question is uh is it part of a conspiracy or is it one sentencing together and that's where if it's in conjunction if it were a totally separate offense then it wouldn't be in conjunction with the other cases. This court if I read correctly in Lyons which was cited in the reply brief um defined uh in talking about note two it wasn't it wasn't exactly to this particular application but they but this court indicated that it was a felony offense uh it was in relation to a felony offense in relation to which the defendant knowingly uh transferred possessed and and the key thing it's not in the but it said in relation to and I think that's the proper interpretation here if it's in relation to the overall scheme uh which in this case was the laundering delays money it doesn't apply if it's not in relation to an offense for instance there are cases that uh that independently somebody made a you know a device a mechanism and I know courts have indicated that's not in relation to the overall scheme so it would apply in there and I think that would be the key. So if if I read Lyons correctly I think that's what it goes to is it in relation to the overall scheme or is it not and that's that's obviously for the court to decide. Thank you. And um Okay. Counsel. Yes, your honor. I just have a couple uh brief points to make on rebuttal um first I didn't address the transfer the trafficking um but just to get back to Judge Larson's uh question earlier about whether trafficking is broader than transfer and not necessarily right I can steal um identities or identity information and I can steal identities and pass it to uh Judge Larson I can pass them to Judge Labandian and I can pass them to Judge White that is both trafficking and um transfer so the courts that have addressed this have said they can be one in the same and the the sentencing commission needs to be more clear so um I'll rest on my briefs on that the the other thing I would say too is it's not overly clear and I think um it was an error for the court to even say that that selling of the credit cards was part of this although the co-conspirators that testified did not talk they talked about using the credit cards that were stolen but they didn't talk about selling only one of the co-conspirators sold credit cards at the direct um instruction of Nicolescu the second point is on the receiving stolen property um the government mentions the Saunders case in that case the court found that her husband had stolen the vehicles she received them from her husband and then she sold them so she was she was offense she was she received stolen property she didn't steal it and she sold it so I think that's consistent um and I would also point this court to um a couple of other things the Kimbrough case I think is very important and out of the ninth circuit which talks about um applying this to conspiracies conspiracies when the conspiracy steals things and then turns around and sells them they're not offense so while it's not as the government points out it's not really um they're not doing this online fraud they were doing something else but it's a conspiracy that is conducting this fraud and it's the conspiracy it doesn't receive stolen property um and then I would just point this court to McMinn which is the first circuit which talks about the history of the guidelines and how this really and why this should apply only to fences because it was property for resale I would just ask this court to vacate the aggravated identity 20 and remand for further proceedings thank you thank you thank you all and the case will be submitted